Okay, we're ready to hear an argument in our final case, Walton v. Harker. Mr. Lewis? Good afternoon, Your Honor. May it please the Court? My name is Tim Lewis. Mr. Lewis, you can take your mask off. Thank you so much, sir. I appreciate that. My name is Tim Lewis. I am an attorney at Gibbs and Holmes in Charleston, South Carolina. I'm here today. Good to see a couple of South Carolina guys on the panel. I'm here today on behalf of Appellant Kathy Walton. Ms. Walton has been a client of our office for many, many years, and she recently concluded her very long civil service career with the many iterations of the entity that had been located in the area that NYWIC now resides. It was formerly Spaywar. Before that, it was the Naval Supply Center. And she's basically, as she puts it, has been there as long as dirt. She started there in 1979. I think we have 1981 in our brief, but she actually informed me that it was 1979 that she had been there. So it had been quite some time that she was with Spaywar. And she's always been an individual who has had to fight for what she got her entire life. She grew up in Alabama in what she calls a shack. She was the daughter of, she was the eighth child in an African-American family in Alabama as a female. And she rose up through the ranks of the civil service, got a bachelor's degree, ended up getting her master's degree, and had a successful career, for the most part, as a contract specialist with the Department of the Navy. So what we're here today to do is avoid what we believe is a miscarriage of justice. Basically when you're presented with, when a court is presented with such clear, direct evidence of retaliation, a court must allow a jury to hear the matter to render a verdict. So here, the appellate appeals the determination that the district court made that she was not retaliated against because of her history of EEO complaints when she was denied admission to the CPI, which is the Contract Process Improvement Team. And later, she was reassigned to a demoted position that effectively stonewalled her to get promoted within the government. So that's not being assigned to the CPI team as one of your claims that you put forward of retaliation? Well, yes, it is. And the way we look at it is that... The reason I ask that question is I don't see where that was ever pled. It wasn't pled. But the reason it wasn't pled was because at the time she could have had no idea that that happened. Yeah, but I don't think it was ever pled in your complaint. That's correct. In the amended complaint, it was never... The information regarding the CPI team did not come out until very late in discovery, in a deposition. So how can you recover on a claim you've never pled? Because it was administratively exhausted. So what has happened and what's before this... Whether or not it was administratively exhausted, if you've never put it in your complaint, if you've never pled it, what's the basis to recover on a claim that essentially doesn't exist? Well, it does exist because when the claim was first filed, when her administrative claim was filed, it put the Navy on notice that they should have discovered, during a reasonable investigation into the matters that she claimed, that this occurred. It was based on the same actor, the same type of retaliation, and the same time frame. We'll just assume, for purposes of present argument, that that's correct. We'll assume it. But it never made it into your pleadings. That's correct. What we're trying to do is get to... For us, it's retaliation. And this is the same type of retaliation we pled. She pled in... There's three paragraphs within her complaint. I believe it's paragraph... So your thesis is that you can recover for retaliation for acts that you've never pled? Not necessarily, Your Honor. We believe that it's in the complaint, not directly, but it's in the complaint in such a way that it would have put the defendant on notice that that was part of what we were claiming. So what part of the complaint were they supposed to imply this from? Well, I can pull out the complaint and tell you again. I believe it's paragraphs 11, 16, and 18. I have that in here, Your Honor, if you'd like me to. Do you have it for you? I apologize for not having that prepared. But what... Our main point is not that... Because you understand that what summary judgment was granted on was her failure to administratively exhaust this particular portion of her complaint. And what the magistrate judge and subsequently the district court judge found was that when... Basically, their ruling was that when she did not administratively exhaust the claim, that they didn't even have to look into it to determine whether or not it was retaliatory or not. Well, the only issue the EEOC accepted was whether Ms. Walton was retaliated against when she was reassigned from the administrative branch to the task order's branch of the contract's competency. I'm not aware of there being any mention anywhere in any of the EEO documents, anything about a CPI team. That is absolutely correct. There is not any mention. But as you know, a plaintiff can, for the first time, bring a new claim of retaliation or another claim if you go by the Stewart-Vinaco case, that you can bring that for the first time at the summary judgment stage if the claim was properly administratively exhausted. And that's what we're claiming here, that that was enough to get us to a jury on that issue. So my paragraph 11 of our complaint, plaintiff has applied for multiple promotions since 1999 and has been consistently denied the opportunity for advancement. The CPI team is an opportunity for advancement. Exactly. And we didn't write the word CPI team in there, but we said opportunities for advancement. That's the same exact thing for us. So there was proof proffered to the district court about that? Because we're not at a motion to dismiss. Right. It's the summary judgment, correct? Right. So the proof is there. You've got to have some evidence. The evidence is clear, as direct and clear as it could possibly be. Nita Bergsteiner, who is a high-level manager at Spay War, testified in her deposition that plaintiff's direct supervisor, Donna Johnson, said, I am not going to put her on this team because she might file an EEO complaint against me, or she might file an EEO lawsuit. And I could read that directly to you, the quote from her deposition, if you'd like, Your Honor. But what our – that's only part of the evidence, in fact. Audrey Orvin, who was plaintiff's second-level supervisor, was the one who was asking about why Ms. Walton was not being allowed to be put on this team. And when Ms. Orvin asked Donna Johnson that question, Donna Johnson, who is an individual that was named in the original EEO complaint, as someone retaliating against her, she said, I'm not going to do it because she's going to file another EEO lawsuit. That's as direct evidence as can be as to what – But the EEO claim had to deal with this movement from one section to the other, correct? I'm sorry? Sir? Your EEO claim said it was the movement from one section to the other. Well, that is – yes. That was one of the three claims that were accepted by the agency and part of the investigation. But again, our point is, and the precedent of this court, is that if there is something that is reasonably related to the original investigation, then that matter can be brought later without having to plead it or having to bring it up. Why is this reasonably related? Okay, good question. So what we have is the same actor, Donna Johnson, doing the same similar type of retaliation. So what did Donna Johnson have to do with this reassignment from one section to the other? Well, Donna Johnson was part of another part of that complaint. Again, there were three facets of the EEO complaint. Number one, Donna Johnson retaliated. You've only got one that survives. Well, that's not true for the investigative phase, Your Honor. So the investigation took place on all three. Those were the three accepted claims. We, at summary judgment, after reviewing all the evidence, determined that we did not have enough evidence to go forward on two of the three claims. So we dropped two of the three claims at summary judgment. That doesn't mean the investigation didn't happen and that the defendant wasn't on notice of the potential retaliation that Ms. Johnson actually made. So our point is that that is such direct evidence of Ms. Johnson coming out outright and saying, I'm not doing this because of her EEO stuff. It's a direct statement about our clients' promotional opportunities within the government. And when you have something that's that direct, we don't even get to McDonnell Douglas stuff at all here. That creates a genuine issue of fact. What is there in the complaint or in any of the evidence either at the EEO or that you proffered to the district court that Donna Johnson had anything to do with any promotions? Okay. First of all, she was her direct supervisor, number one. She was responsible for Ms. Walton's performance reviews. She was named in the complaint as the individual who retaliated against Ms. Walton by giving her a bad performance review in 2012. And again, that was one of the three claims that was accepted by the agency EEO and investigated. This isn't the EEO office outside of the agency. This is the Spabor EEO office that we're talking about. So when they investigated her claim that Donna Johnson retaliated against her, that performance review came out in October of 2012. This alleged conversation that, again, for the purposes of this talk today, it happened because we've got to presume everything in our favor for the purposes of summary judgment. But that conversation between Anita Bergsteiner, Donna Johnson, and Audrey Orvin occurred in the late summer, early fall of 2012. That's directly within the time frame of that investigated EEO complaint and directly the same exact supervisor doing very similar, at least similar enough to put the defendant on notice. Now, but what does that have to do with promotions? There's nothing pled in the complaint that I've seen, and I'm not aware of any evidence in either the administrative record or the district court records that tells you these are the promotions I sought, these were the qualifications, whether Donna Johnson or anybody else had anything to do with any of those, who was selected, who did the selecting, what the qualifications were, why mine were superior. There's none of that anywhere. Right. I don't think we need to have that because, number one, the defendant admitted in their answer that Ms. Walton applied for promotions after the time that she filed the complaint. Yeah, but that doesn't prove. What does that prove, though? I mean, we're not at a motion to dismiss. It's a motion for summary judgment. You have to have some evidence. Your Honor, again, we know that she wasn't promoted to the CPI team. We know that 100%. And that's, for the purposes of this, that's all that we need. We know that she had the, Donna Johnson had the retaliatory animus to do this. She said it out loud. She didn't hide it. And we have the rare occasion where somebody within that room came out and said what exactly happened. So I understand what you're saying about having comparators and having all these promotional things. But to us, when they admitted that, yes, she has applied for promotions, it is undisputed that she has not received a promotion since 1999. And that is absolutely undisputed within the record. So because she applied for promotions and they admitted she did and she hasn't received one, two things that are undisputed, we know that those things didn't happen. So are we claiming separate, distinct, discrete acts of not being promoted in this case? Absolutely not. That's not what we're going for here. What we're trying to show you is that there is such direct evidence on this specific type of promotion that is clear from, again, an upper-level individual within Spay War who testified about it, credibly under oath, at the end of the discovery period. That should have given us at least enough to get through to a jury to determine whether or not there was enough retaliatory animus there to sustain any of our causes of action. Now, again, we're down to the retaliation. That's all we've got. We have retaliation based on the CPI team and retaliation based on the move to a different area of the contracting section of Spay War. So those things, in our minds, contract – I'm sorry, retaliation, as you know, plaintiff – when a plaintiff has a retaliation claim, they get a lot more leeway than they would normally with a regular discrimination claim. These things aren't supposed to be tripwires for plaintiffs. We're talking about a woman who filed this complaint by herself, and she filed it within the agency, didn't know exactly what the statutory stuff was and could have had no clue at the time that she filed this that Donna Johnson was taking these retaliatory actions against her. So what we filed – Is it your position that Ms. Johnson made both decisions, that she reorganized the company and she made the decision on the CPI team as to who was going to be on it? Was she the ultimate decision maker for both? For the CPI team, 100 percent, Your Honor. No doubt about that. For the other portion, she was just part of a group of people who was making that decision. Is there evidence that she was a decision maker? I didn't understand her to be a decision maker there. That seemed like to be a broader issue than she was at. I'm out of time here. Would you like me to answer that question? Go ahead. So you're correct. On the CPI team, she was the direct decision maker. On the other side of it, on the moving to a different part of the contract administration, she was not what I would call a decision maker under the law. You just said you suggested that Johnson made those decisions. I was trying to make sure. Those decisions were made by different people. They may still be reasonably related, or they may not be, but it's not because she made both decisions. Correct. In this organization, it's a line of individuals. You have first tier, second tier, third tier. She was the first tier, and the second and third tier, and I think maybe the fourth tier, were involved in making the decision on the other part. Thank you so much. All right. You've got some time left on rebuttal. Mr. Jordan. Thank you, Your Honor. May it please the Court, my name is Will Jordan, and I represent the United States of America. Kathy Walton's claim that was before the district court was that her 2013 realignment was retaliatory in violation of Title VII and the Age Discrimination in Employment Act. The district court correctly held that Ms. Walton had failed to establish that claim as a matter of law because Ms. Walton failed to establish a causal link between her 2005 and 2007 EEO activity and the 2013 realignment. Additionally, the government set forth a legitimate nondiscriminatory reason for the 2013 realignment. Ms. Walton failed to produce any evidence to rebut the asserted nondiscriminatory reason and thus did not meet her burden of showing pretext. For those reasons, this court should affirm the district court's grant of summary judgment in the government's favor. Your Honors, any claims based upon the CPI team and the failure to promote were not administratively exhausted as the district court held. Interestingly, those claims were addressed by the district court first in the R&R that was recommending the dismissal of Ms. Walton's claims and prior to that had not been addressed. The charges before the administrative agency were three charges, one relating to a 2012 performance appraisal, one relating to a 2013 realignment, and one relating to lower paid and comparable coworkers. The allegations regarding the CPI team exclusion and the failure to promote were not anywhere within the administrative charge. They were not developed in the course of the investigation by the EEO agency. If you look at the agency's notice of acknowledgement of claims, which is in the joint appendix at 196 to 97, there's no reference to those items. It's not addressed. Those items are not addressed in the EEOC's decision affirming dismissal of Ms. Walton's claims at the administrative level. But your colleague says he agrees with all that, right? Yeah, they're not there, but they're reasonably related. Tell me why they're not. We've got all these cases that sort of walk through the various factors of how this reasonable relation test plays out. Why is this, the CPI piece of the story, not related to the performance review and the lower pay claims? I think he's saying those more so than the realignment claim, but maybe not. Sure, Judge Richardson. So if you look at the court's decision in Chaco, it has this statement that the allegation of a discreet act in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct. And that's what we're dealing with here. The plaintiff had alleged three discreet acts that she based her administrative claim on, and then when she gets into the lawsuit, she gets into discovery, she starts making additional broader allegations about a failure to promote absence from the CPI team. The CPI team simply, it's not at all, it's not based on the 2013 realignment. Counsel for Ms. Walton referred to the decision makers. They were different decision makers. The plaintiff pled in her complaint in this case that it was Mr. Pagy that reassigned plaintiff to an undesirable position. That is paragraph 18 of the amended complaint at page 11 of the joint appendix. So we've got different decisions. All right, fine, but so I think his argument is, all right, yeah, I sort of concede they're probably different actors with respect to the realignment, but I take his argument to be, but the performance review that she alleged was discriminatory was the same actor. That's Mr. Johnson, Ms. Johnson, sorry. And, you know, it's like ballpark the same time frame, and, you know, you might think a negative performance review and a failure to promote are not like totally different conduct. Those being sort of three of the broad things we've talked about. Why wouldn't I think about it that way? Ignore the realignment for a second, because I think you're right. It's not related to the realignment. But why not the other two? Sure, Your Honor. So one thing that I would say is that there's no evidence in the record that the CPI team was a denial of a promotion. And so to the extent that she's saying I got this negative performance review that kept me from getting a promotion, and then I got denied this promotion in the form of a CPI team participation, the record does not indicate that the CPI team inclusion is, quote, a promotion. There's no evidence in the record that it would have increased her salary, increased her grade level or pay level. The other thing that I would point to you. Did it make her more likely to get a promotion? Is there evidence in the record that it would make her more likely to get a promotion? Just evidence in the record, right? I'm not asking if you believe that, right? I'm just asking is there evidence in the record? I don't believe there's evidence in the record beyond Ms. Walton's own statement that she believed that, that it was her perception that that would have increased her odds of promotion. Was that rebutted in any way? I mean, was there, I mean, you know, it's summary judgment, right? I mean, I understand your position, but, I mean, if it made her more likely to get a promotion, then that is sort of if we start talking about adverse employment action, right? Well, Your Honor, I don't believe that there's direct evidence in the record that it would have made her likely, more likely to get a promotion. And back to Judge Agee's point, there are no specific allegations about what promotions she applied for. And so this would be a different case if Ms. Walton had later applied for a specific position and had been told, you have to be a CPI team leader in order to be considered for this position, and so you're not going to get it. That would be a different case. But here there's no evidence that a specific job that she applied for was denied to her because of that reason. And moreover, there's no evidence that there's any specific job that she applied for that she should have received. Ms. Walton has said, I've been denied promotions. Well, we don't know what she applied for, Your Honor. She could have applied to be the head of the agency for which she could not have been qualified. So without knowing what she applied for, who else applied for it, who was selected, what qualifications they had, it's impossible to assess these failure to promote claims. Your Honor, the other point that I would make on that issue is Nina Bergsteiner is the affidavit of Nina Bergsteiner has been used by Ms. Walton in support of her case. Ms. Bergsteiner is an example of why Ms. Walton's claims on the promotion side fail. Ms. Bergsteiner was realigned in 2013. She filed an EEO claim, and she was promoted. She was a supervisor over Mrs. Walton. And so to the extent that Ms. Walton claims, as she does in her amended complaint, that this realignment all but erased, that's a quote, all but erased her opportunities for promotion, that is directly contradicted by their primary witness that they rely on in this case, Nina Bergsteiner, who was promoted. Let me talk with you just a little bit more generally about this. Has Harker or the United States forfeited any challenge to the administrative exhaustion after Port Bend? I'm sorry, Your Honor? Has – well, let me put this way. Was Ms. Walton required to administratively exhaust her legal theories involving failure to promote after Port Bend v. Davis? I believe she was, Your Honor. And the court – and I will point the court toward the Stewart case. Stewart, which was decided by this court in 2019, makes it clear that there is not, as the appellant suggests, some no longer necessary to administratively exhaust retaliation claims. Stewart makes it clear that to the extent that you're bringing retaliation claims, those claims still have to be administratively exhausted before you can bring them to the district court. Well, could it be waived because the issue wasn't raised until two years after the suit was brought? Well, Your Honor, the issue wasn't raised until Ms. Walton attempted to bring an additional claim before the court. And so, for example, if Ms. Walton had pled in her amended complaint that she was excluded from the CPI team and that that was an adverse action, then it would have been on the agency to plead in response to that complaint that that claim had not been administratively exhausted. What we have here, however, is the alleged conduct excluding her from the CPI team is in 2012 or 2013. The amended complaint is filed. And it's not really until the magistrate judge issues her report and recommendation saying you did not exhaust your claims related to the CPI team and the failure to promote that that even becomes an issue. And, Your Honor, the other thing that I would point out here that I think is important is the court did not grant summary judgment necessarily on the failure to exhaust. The claim that was before the court was a 2013 realignment. The summary judgment was granted on the basis that she had not proved the 2013 realignment was retaliatory. In the report and recommendation issued by Magistrate Judge Cherry, Magistrate Judge Cherry indicated that to the extent that the plaintiff is relying on the CPI team exclusion and the failure to promote to support her claims, those were not administratively exhausted. That really is the first time that this issue came up for the parties. And so certainly at that point, the government responded to it, but the government can't assert failure to exhaust on claims that it doesn't yet know about. Your Honor, even if there was exhaustion of the claims related to the CPI team and the failure to promote, the agency's position is that those claims were not properly pled before the district court. The complaint contains no reference to the CPI team. The complaint generally refers to failure to promote but does not address that issue in any detail. And so even if the court were to find that there was exhaustion or that exhaustion was not required, the district court should still be affirmed on the basis that Ms. Walton had not properly pled those claims at the district court level. Your Honor, respectfully, there is no direct evidence of retaliation in this case, particularly as it relates to the 2013 realignment. Could you say that one more time? I guess I want to go back and just make sure that I'm understanding the government's position with respect to Judge Floyd's question and then Judge Agee's question from earlier with respect to the fear to allege the CPI issue, whatever you want to call that, in the complaint. Do you take the position that they can, as maybe Magistrate Judge Cherry sort of suggested they could, that they could just raise that at summary judgment without having pled it? I do not, Your Honor. And we addressed that in our brief in response to summary judgment, that there's well-established case law that you can't amend your pleadings in response to a motion for summary judgment. And so we have made that clear. I believe the point that the government is making is that even if those claims were exhausted, they were not adequately pled in the amended complaint. And to the extent that they came up in discovery, there was no effort to amend the complaint in order to address those claims. So your colleague, I take it, says in paragraph 11, she says she was consistently denied the opportunity for advancement. And he says that we should interpret that to mean anything, I guess, like any potential for advancement. And the CPI team might be thought of as a promotion or maybe not, but whatever. His theory is that's in paragraph 11. What's your response to that? Well, Your Honor, I don't believe that you – when it comes to a lack of a failure to promote, and if you're looking at the standards for a retaliation claim, which is an adverse act, EEO activity, and a causal link between the two, I think the problem with asserting this broad, I was generally denied promotional opportunities is that it's impossible to meet that standard because you're not able to connect an adverse act and EEO activity when you're saying, over the course of a 25-year career at the government agency, I was denied promotional opportunities. Is that the same – I mean, if the plaintiff just pled in the last 30 years I've been subject to adverse employment actions, period, I assume you'd make sort of the same argument, that you can't then show up at summary judgment and be like, all right, here are the 17 actions that I included there. Exactly, Your Honor. I mean, perhaps they could – I don't know how the government would respond to that complaint itself, but perhaps throughout the course of discovery the plaintiff could identify what specifically they were dealing with. But here there's no reference to the CPI team. It doesn't come up until late in the case and really isn't addressed until summary judgment. Well, if we were to find that Walton was not required to administratively exhaust what Johnson alleged – would Johnson's alleged statement be direct evidence of retaliation? So I think that Johnson's statement, if you get past the failure to exhaust issue, Johnson's statement admittedly is direct evidence of the CPI team exclusion. I don't think there's any way around that. If what Johnson said is accurate, then that is direct evidence that she was excluded from the CPI team because of prior EEO activity. I think the issue there, Your Honor, is that, again, it wasn't pled, and there also is not evidence in the record that this exclusion from the CPI team was an adverse act sufficient to satisfy the standard for retaliation, which I believe the court would still require Ms. Walton to do. I would also indicate or mention, Your Honors, that the statement by Ms. Johnson, the alleged statement about exclusion from the CPI team, is not direct evidence of any other type of retaliation with respect to the realignment or lack of promotional opportunities. The court in Stover made it clear that direct evidence must demonstrate that the forbidden consideration was a determining factor in the challenged conduct. And so it cannot relate to other conduct. It must relate to the challenged conduct. And the court has also, in O'Connor, which is cited on page 18 of our brief, indicated that direct evidence is such that would prove the existence of a fact without any inferences or presumptions. And so with respect to these other allegations about the 2013 realignment, lack of promotional opportunities, it's the government's position that under Stover and O'Connor that that is not direct evidence of retaliation. The court also correctly determined that there was no causal link between the 2007 and 2005 EEO activity and the 2013 realignment that Ms. Walton has complained about. There's no question that there's no temporal proximity, as the court has discussed, between the EEO activity and the complaint of conduct. And if you look at the Johnson case, which is from this court in 2008, it finds that the plaintiff relying on alleged retaliatory events that occurred more than three and a half years after the first EEO charge did not support a claim for retaliation. And so here we have the plaintiff relying on action in 2012 and 2013 that she claims was a pattern of antagonism but that is dating back to the 2007 EEO activity and under Johnson is insufficient to support the causal link. Finally, the court correctly determined that there was a legitimate nondiscriminatory reason for the realignment. There was a change in Congress. Congress decided to change the law. The change in that law dictated a shift within the agency from multi-award contracts to single-award contracts, which resulted in a need within the agency to have individuals with sort selection experience working in the task order section. Ms. Walton herself testified that she had a lot of experience in that area. She was realigned to that area and that legitimate nondiscriminatory reason has not been rebutted by Ms. Walton and so fails as a matter of law. Your Honors, I'm happy to answer any questions. Otherwise, we will rest on our briefs. Thank you very much, Mr. Jordan. Mr. Lewis, you've got some rebuttal time. Thank you so much. Briefly, there are a couple of things that Mr. Jordan said I wanted to correct. There is evidence in the record that the CPI team would have been at least some form of promotion on our joint appendix, page 274. It's page 58 of Patricia Johnson, not Donna Johnson, two different Johnsons, Patricia Johnson's deposition, and I'll quote here, well, because had Kathy maybe had the opportunity to be in the CPI events for the core processes that Donna would not allow her to be in or Audrey Override, it allowed her, she could have had, you know, an opportunity to put that expertise not only on her resume, but if there were interview questions, she would have been able to respond to them. That's the brief evidence I found in the record, just glancing as he was doing this. And I'll, Mr. Jordan, my friend, Mr. Jordan, mentioned Nina. That suggestion is that any lateral move would, in your view, necessarily be an adverse employment action, because I could always say, oh, well, they do something slightly different, right? And had I been interviewed about hammering a nail, I would have then been able to, like, talk about it. So that would answer, that would suggest that every lateral move is an adverse employment action. And we've said that's not true, right? You have, and I agree with you on that. And that's, unfortunately, with the time I was given to pull that out, that's all I could find. I believe there is other evidence, but I cannot quote it as we stand here today. I would say that at least it's something that shows that there was some sort of advantage to being on the CPI team that may have helped her with promotional opportunities down the line. I do understand your point, though, Your Honor. Nina Bergsteiner, you mentioned that she was promoted. She was promoted because she filed an EEO complaint, and we settled that EEO complaint with her being promoted. That was how she got the promotion. And I know because I was the attorney on that case. So there were three ladies who came to my office on the same exact day, Patricia Johnson, Nina Bergsteiner, and Kathy Walton. All three of them complained that they were being realigned to an undesirable demotion position. Two of them were Caucasian. One of them was African American. Two of them, they settled very early in the process. Just some background on that. So the hard part about this case, and I think and I totally understand where you all are coming from on this one, but the real hard part about it is we know, and as Mr. Jordan admitted just a minute ago, we know for sure that she was retaliated against. That the CPI team, you know, not putting her on the CPI team was retaliation. We know that 100%. The question is whether or not she has a claim for that in this lawsuit. And that's why it's a difficult decision. The other portion of the complaint, the other portion that we're arguing here today about the realignment and about her moving to that section, we believe, at the time that we filed this lawsuit, we believe that that was the major portion of this complaint because, as I said, we had two other individuals who had the same exact move happen that we both settled very quickly on that. So when we determined later on that that wasn't going to happen, there was a, for us, there was a difference of opinion as to whether or not this was actually an adverse action or not. And that's why it became a difficult thing to deal with in summary judgment. However, let me see. Oh, and the Chaco case is just nothing like this case at all. I'm sure you all have read it, and I know you know it. But the Chaco case was one where it went to trial, and the fellow brought out a bunch of stuff about people calling him names that had been nowhere near the administrative complaint. This is totally more like the Snyder case. I believe Judge Floyd, you were on that panel. And the Snyder case was, you know, it was similar enough in the administrative charge that it put the defendant on notice that this stuff may have happened and that they should have administratively exhausted it. And, Your Honors, if you all have any questions, I'm happy to answer them. But that's, I think, all I've got for you. Thank you very much. We appreciate the argument of both counsel. As you know, our tradition is to come down and shake hands with counsel after argument. But that's not in the cards for us during this term of court. So we hope you'll return in the future, and we'll be able to do that. With that, I'll ask the clerk to adjourn court until tomorrow morning. Thank you, Your Honor. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, Julius N. Richardson, Henry F. Floyd